# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FARM FAMILY CASUALTY INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | |
| v. | : : | 3:06-cv-0513 (WWE) |
| SCARLETT L. BURKE, RYAN BOYLE, ppa MATTHEW BOYLE and NANCY BOYLE, and MATTHEW BOYLE and NANCY BOYLE, individually, | : : : : : : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This action arises from plaintiff Farm Family Casualty Insurance Co.'s ("FFCI") claim that it is not obligated to provide indemnification to defendant Scarlet Burke regarding claims made by the other named defendants, Ryan Boyle, ppa Matthew Boyle and Nancy Boyle, and Matthew Boyle and Nancy Boyle, individually (collectively, "defendants") arising from a personal injury lawsuit currently pending in the Connecticut Superior Court. In its motion for summary judgment, FFCI seeks a declaratory judgment of its rights and obligations pursuant to a Farm Family Umbrella Policy issued to plaintiff and in effect at the time of the accident. In the alternative, FFCI maintains

1

that partial summary judgment is warranted because the FFCI Policy bars coverage for punitive or exemplary damages.[1] Defendants object to plaintiff's motion, claiming that said policy is ambiguous and that genuine issues of material fact preclude the granting of summary judgment.

## BACKGROUND

On October 13, 2003, Burke was the driver of a truck involved in a motor vehicle accident in which Ryan Boyle, a minor, suffered severe multiple injuries. Ryan Boyle, Matthew Boyle and Nancy Boyle filed a lawsuit in the Connecticut Superior Court for the Judicial District of Fairfield (<u>Ryan Boyle, ppa Matthew Boyle and Nancy Boyle, et al. v. Kenneth Novak, et al.</u>, Docket # FBT-CV-04-4003712-S), claiming that Ryan's injuries were caused by Burke's negligence, and seeking to recover damages from Burke.

At the time of the accident, Burke was the named insured under an FFCI Personal Auto Policy No. 0601P636-1 with coverage limits of $250,000 and an FFCI Umbrella Policy No. 0601B1203 with coverage limits of $1,000,000. She was also the named insured under an Allstate Insurance Co. ("Allstate") Automobile Liability Policy No. 919255332 with coverage limits of $300,000 and an Allstate Personal Umbrella Policy No. 91955846 with coverage limits of $1,000,000. All policies were in effect on October 13, 2003.

---

[1]Defendant Burke does not contest plaintiff's claim for partial summary judgment; instead, she argues that it is not entitled to summary judgment to bar all coverage of Burke's claims under the policy. The Boyle defendants object to both FFCI's motion for a global summary judgment and its alternate remedy.

The FFCI Umbrella Policy provides, in relevant part:

AGREEMENT
We will provide the insurance described in this policy if you:
1. are a Farm Bureau member at the time of application and all subsequent renewals;
2. have paid the premium;
3. have complied with the policy provisions. . . .

PART I
DEFINITIONS
5. DAMAGES means:
a. sums an INSURED must pay (legally or by agreement with our written consent) because of PERSONAL INJURY or PROPERTY DAMAGE covered by this policy; . . . .

9. INSURED means:
a. If the named INSURED on the declarations page is an individual, then INSURED means you. . . .

20. PROPERTY DAMAGE means:
a. physical injury to tangible property; or
b. destruction of tangible property including the loss of use of this property.

PART II
COVERAGES
We will pay on an INSURED'S behalf DAMAGES for which an INSURED becomes legally responsible due to PERSONAL INJURY or PROPERTY DAMAGE caused by an OCCURRENCE. This coverage applies only to damages in excess of the PRIMARY INSURANCE[2] or the RETAINED LIMIT, whichever applies.

PART III
EXCLUSIONS
We do not cover:

29. PERSONAL INJURY or PROPERTY DAMAGE with respect to which an INSURED under this policy is also an INSURED

---

[2] The FFCI Policy defines "PRIMARY INSURANCE" as "any insurance collectible by the INSURED which covers the INSURED's liability for PERSONAL INJURY or PROPERTY DAMAGE

under a Personal Umbrella or Commercial Umbrella or would be insured under such policy but for its termination upon exhaustion of its limit of liability.

  48. Punitive or exemplary DAMAGES.

PART IV
LIMIT OF LIABILITY

  1. This policy pays only after the limits of the PRIMARY INSURANCE and excess insurance, and any other PRIMARY INSURANCE and excess insurance covering the claim have been paid by you or on your behalf.

PART VII
POLICY CONDITIONS

  2. Defense settlement
    a. If PRIMARY INSURANCE or any other collectible insurance does cover PERSONAL INJURY or PROPERTY DAMAGE covered by this policy [Farm Family is not required to take charge of the investigation, defense or settlement but has the right to join in such activities and may do so as it feels is appropriate].

    b. If PRIMARY INSURANCE or any other collectible insurance does not cover PERSONAL INJURY or PROPERTY DAMAGE covered by this policy [Farm Family will do several enumerated actions to defend, investigate and pay various costs]; and

  5. Other Insurance
This insurance is excess over other collectible insurance. This applies whether the other insurance is stated to be:
    a. primary;

    b. contributing;

    c. excess; or

    d. contingent.

The Allstate Policy provides an "other insurance" provision similar to that found in the FFCI policy:

> This policy provides only excess insurance. It does not contribute with any Required Underlying Insurance or other insurance which applies to an occurrence. It also is excess to any Retained Limit an insured assumes.

The Allstate Policy contains a second "other insurance" clause:

> We will pay only those amounts within our limit of liability which exceed the sum of: 1. The limits of liability to any Required Underlying Insurance which apply to the occurrence, plus 2. The limits of any other liability insurance available to an insured which apply to the occurrence.

FFCI claims that it is entitled to summary judgment because Exclusion 29 to its policy operates to bar coverage in that it unambiguously precludes coverage where the insured is also an insured under a personal umbrella policy such as the one included in the Allstate policy. In the alternative, It also argues that it is entitled to partial summary judgment because Exclusion 48 bars coverage for punitive or exemplary damages.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 24.

It is well settled that an insurance contract is analyzed to assess the intent of the parties: what the insured expected to receive and what the insurer expected to provide. Royal Insurance Co. of America v. Zygo Corp., 2003 WL 21960734, *3 (D.Conn.). "Where the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. If, however, the words of the policy are susceptible of two equally responsible interpretations, the Court must adopt that interpretation that will sustain the claim and cover the loss." Id. See Heyman Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756, 769-70 (1995). Where there is clear and unambiguous language, the "the determination of what the parties intended by their contractual commitments is a question of law." Thompson & Peck, Inc. v. Harbor Marine Contracting Corp., 203 Conn. 123, 131 (1987). See also, Mycak v. Honeywell, Inc.,

6

953 F.2d 798, 802 (2d Cir. 1992). Summary judgment is appropriate only where the contract language is wholly unambiguous. "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate." Thompson v. Gjivoje, 896 F.2d 716, 721 (2d Cir. 1990). Because the insurer drafted the contract, any ambiguity in the contract must be construed in favor of the insured. Community Action for Greater Middlesex County, Inc. v. American Alliance Insurance Co., 254 Conn. 387, 399 (2000).

Both the FFCI Policy and the Allstate Policy contain "other insurance" clauses. There are three types of "other insurance" clauses: 1) excess; 2) pro rata ; and 3) escape. An "excess" insurance clause provides that if there is other valid insurance applicable to the loss, the excess policy comes into effect only if the claimant's loss exceeds the policy limits of the primary insurer. A "pro rata" clause provides that if there is other valid coverage, the insurer is liable only for its pro rata share of the loss; i.e., the proportion that the policy limits hold against the total applicable policy limits. An "escape" other insurance clause provides that the existence of other coverage eliminates the insurer's liability to the claimant of the other policy. 8A J. Appleman, Insurance Law and Practice (1981) § 4906, pages 345-52. Aetna Casualty and Surety Co. v. CNA Insurance Co., 221 Conn. 779, 784 n.3 (1992).

FFCI posits that paragraph 29 of its policy is an "exclusion" of coverage that is triggered as a result of the Allstate Policy's status as an "umbrella" policy. Defendants argue that paragraph 29 is an "escape" clause and that it is inconsistent with the policy's "excess" clause contained in section IV, paragraph 1 and in section VII, paragraph 5. Defendants also assert that the existence and applicability of the Allstate

policy dictate that the FFCI policy must be read in conjunction with it and its own "other insurance" clauses delineating it as an "excess" insurer.

While it is true that, in and of itself, Exclusion 29's plain and clear language precludes FFCI's indemnification of Burke, it is not possible to read this provision in the vacuum that plaintiff suggests. To do so would be to ignore the totality of the insurance contract. "It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." Community Action for Greater Middlesex County, Inc. v. American Alliance Insurance Co., 254 Conn. at 399.

Because the FFCI policy includes both an "escape" clause and an "excess" clause, an internal conflict arises. Under the "escape" clause, FFCI asserts its denial of all coverage due to Allstate's status as a "personal umbrella" policy. However, pursuant to the "excess" clause in the FFCI policy, FFCI's is liable for coverage up to the "amount stated in the declarations page" after the "excess" coverage of the Allstate policy is exhausted. This conflict renders the FFCI policy ambiguous and, as a result, it must be read in favor of indemnification for Burke, the insured. See Hansen v. Ohio Casualty Insurance Co., 239 Conn. 537, 548 (1996) (inconsistent language in policy created ambiguity which must be resolved against the insurer); Raffel v. Travelers Indemnity Co., 141 Conn. 389, 392 (1954) ("When the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted."). Summary judgment must be denied on this ground.

The Connecticut Supreme Court has determined that public policy is in favor of the insured being granted full indemnification for a loss and that "other insurance" clauses should be read in favor of that end. In <u>Aetna Casualty and Surety Co. v. CNA Insurance Co.</u>, 221 Conn. 779, 783 (1992), the Court concluded "that 'other insurance' clauses are valid for the purpose of establishing the order of coverage between insurers, as long as their enforcement does not compromise coverage for the insured." The conflicting "excess" clauses in the FFCI and the Allstate policies could compromise the coverage available to Burke and, therefore, may be in contravention of public policy. "We conclude, therefore, that if a careful reading of the language of the policies in their entirety reconciles any conflict or ambiguity that may arise when identical or similar 'other insurance' clauses exist, and if the enforcement of the clauses would not produce adverse consequences for the insured, then the clauses should be enforced as written." <u>Id.</u> at 785. Because it cannot be determined what roles the FFCI and Allstate policies' "other insurance" clauses would play based on the record before the Court, summary judgment must be denied.

Furthermore, because the amount of Burke's damages has not been ascertained, it is not possible to assess FFCI's responsibility vis a vis the sufficiency of the Allstate policy, if applicable, to provide coverage. It is not clear from the record whether the FFCI policy would be implicated; i.e., whether the Allstate policy, as primary insurance, would provide indemnification for Burke and thus preclude the activation of the FFCI policy as an "excess" policy.

Plaintiff has also moved for partial summary judgment on the basis that if the Court should find that Exclusion 29 does not bar coverage for all claims asserted

9

against Burke, Exclusion 48 precludes coverage for double and treble damages and attorneys' fees.

The underlying lawsuit claims "double or treble damages in accordance with Conn. Gen. Stat. § 14-295, attorneys' fees and costs."[3] FFCI asserts that Exclusion 48 specifically bars coverage for "punitive or exemplary DAMAGES." The policy does not provide definitions of "punitive" or "exemplary."

Defendants concede that the FFCI policy may be exempt from providing coverage for Burke for common law punitive or exemplary damages.[4] However, defendants posit that FFCI is not excused from coverage of Burke for punitive or exemplary damages (double or treble) pursuant to Conn. Gen. Stat. § 14-295. Caulfield v. Amica Mutual Insurance Co., 31 Conn. App. 781, 786 n.3, cert. denied, 227 Conn. 913 (1993). In Caulfield, the Connecticut Appellate Court considered the implications of uninsured motorist coverage and found that the policy exclusions such as the one at issue here did not preclude payment of § 14-295 double or treble damages. It declined to award such damages, however, because it determined that to do so would place the insured in a better position than if the tortfeasor had been

---

[3]Conn. Gen. Stat. § 14-295 provides in relevant part: "Double or treble damages for persons injured as a result of certain traffic violations. In any civil action to recover damages from personal injury, wrongful death or damage to property, the trier of fact may award double or treble damages if the injured party has deliberately or with reckless disregard operated a motor vehicle . . . and that such violation was a substantial factor in causing such injury, damage, death or damage to property."

[4]Under Connecticut common law, "the terms 'exemplary damages' and 'punitive damages' are interchangeable labels for damages awards under circumstances to compensate a plaintiff for his expenses of litigation" Harty v. Cantor Fitzgerald and Co., 275 Conn. 72, 93 (2005).

insured. It also found that uninsured motorist carriers have no relation to the tortfeasor and therefore cannot allocate the risk of punitive damage claims to the tortfeasor. Such a result would contravene public policy. Id. at 787.

This public policy is not at issue in the instant matter, which does not implicate uninsured motorist coverage and which presents a direct relationship between Burke, the insured tortfeasor, and FFCI. There are no policy considerations that militate against the assessment of statutory double or treble damages against FFCI. The Court will deny plaintiff's motion for summary judgment on this ground.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [Doc. 16] is DENIED.

Dated this 1st day of October, 2007 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge